IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JENNIFER L. RYAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 3:25-cv-01223-E-BT |
| | § | |
| PAYPAL INC., | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is Defendant PayPal Inc. (PayPal)'s Renewed Motion to Compel Arbitration and Dismiss under Rule 12(b)(3) or, alternatively, Rule 12(b)(6) (ECF No. 13). For the Reasons stated, the Court should **GRANT IN PART** Defendant's Motion, **COMPEL** the Parties to arbitration, and **STAY** the action pending arbitration.

## Background

In her Amended Complaint, Plaintiff Jennifer Ryan alleges that she maintained a PayPal account for about fifteen years—until it was terminated on January 21, 2021. Pl. Am. Compl. ¶ 1 (ECF No. 8). Six days earlier, federal agents arrested Plaintiff on a misdemeanor charge arising from her presence at the U.S. Capitol on January 6, 2021. *Id.* ¶ 12. Plaintiff received a 60-day sentence for the January 6 misdemeanor offense. *Id.* ¶ 16. She later received a Presidential Pardon. *Id.*

1

The same day as her arrest, Plaintiff posted a fundraising message on social media. *Id.* ¶ 13. And later that day, PayPal closed Plaintiff's account based on a "policy violation." *Id.* By January 22, 2021, multiple news articles referencing Plaintiff's account termination had been published. *Id.* ¶ 14.

Plaintiff alleges that PayPal coordinated with government agencies and leaked information about her account termination to media outlets. *Id.* ¶¶ 1, 15. As a result, Plaintiff claims, she was banned by financial institutions, suspended from social media platforms, evicted from her real-estate office, and forced to change her name, close her business, sell her home, and relocate. *Id.* ¶¶ 15, 17. Plaintiff alleges that she continued to encounter account closures, professional difficulties, and expenses related to litigation and relocation through 2025. *Id.* ¶ 17.

In June 2022, Plaintiff filed a civil action in a Denton County state court asserting tort and statutory claims against PayPal related to the termination of her account. *Id.* ¶ 18. PayPal then removed the case to federal court in the Eastern District of Texas, *Jenna Ryan et al. v. PayPal Hold. Co.*, 4:22-cv-00559-ALM-BD (E.D. Tex. 2022). *Id.* ¶ 18. The federal court ordered Plaintiff and PayPal to arbitration. *Id.* ¶¶ 19. Plaintiff initiated an arbitration proceeding with the American Arbitration Association (AAA), but the AAA ultimately closed the matter due to unpaid fees. *Id.* Plaintiff voluntarily dismissed her first lawsuit on May 1, 2025. *Id.* ¶ 20.

Two weeks later, Plaintiff sued PayPal in this District, asserting claims under 42 U.S.C. §§ 1983 and 1985, as well as state-law tort claims. *See* Original Compl.

(ECF No. 3). In response, PayPal moved to compel arbitration and dismiss the case, or alternatively, to dismiss the Complaint under Fed. R. Civ. P. 12(b)(6). *See* ECF No. 6. Plaintiff then filed her Amended Complaint, ECF No. 8, prompting PayPal to file the pending Renewed Motion to Compel Arbitration and Dismiss. *See* ECF No. 13.

In the Renewed Motion, PayPal seeks to compel arbitration based on language in PayPal's User Agreement (the "Arbitration Agreement"). *See* Renewed Mot. Compel (ECF No. 13) (citing Pl. Am. Compl., Ex. 9, Arbitration Agreement (ECF No. 8-9)). PayPal also argues the issues litigated and decided in the Eastern District of Texas—that the Arbitration Agreement is valid and enforceable—should be afforded preclusive effect here, and that each of Plaintiff's claims should be compelled to arbitration. *See id*. 6–13. Plaintiff responds that issue preclusion does not apply, that her federal statutory claims are non-arbitrable, that PayPal has waived its right to arbitration, that the prohibitive costs of arbitration prevent the Court from enforcing the Arbitration Agreement, and that "Equitable Considerations" demand the judicial resolution of her claims. *See* Pl. Opp. Mot. Compel (ECF No. 14).

## Legal Standards

Historically, American courts adopted from the English common law "centuries of judicial hostility to arbitration agreements." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 510 (1974). But Congress passed the Federal Arbitration Act (FAA) to reverse this hostility and "ensure judicial enforcement of privately made

agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219 (1985). Section 2 of the FAA provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity or the revocation of any contract." 9 U.S.C. § 2; *see also Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010). "The FAA thereby places arbitration agreements on an equal footing with other contracts . . . and requires courts to enforce them according to their terms." *Rent-A-Center*, 561 U.S. at 67.

Parties aggrieved by another party's failure to arbitrate a claim under a written arbitration agreement may petition a federal court "for an order directing that such arbitration proceed in a manner provided for in such agreement." *Id.* (quoting 9 U.S.C. § 4). "Once the court is satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, it shall order arbitration." *Gezu v. Charter Commc'ns*, No. 3:20-CV-01476-G-BT, 2021 WL 419741, at *4 (N.D. Tex. Jan. 7, 2021) (Rutherford, J.), *rec. adopted,* No. 3:20-CV-01476-G (BT), 2021 WL 410000 (N.D. Tex. Feb. 5, 2021) (Fish, J.), *aff'd,* 17 F.4th 547 (5th Cir. 2021) (internal quotation marks omitted).

"Courts perform a two-step inquiry when considering whether to compel arbitration." *Id.* (quoting *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003)). First, the court determines "whether the [P]arties agreed to arbitrate the dispute," as "[a]rbitration is strictly a matter of consent." *Id.* (quoting

4

*Granite Rock Co. v. Int'l Brotherhood of Teamsters*, 561 U.S. 287, 299 (2010)). This inquiry involves answering two questions: "(1) whether there is a valid agreement to arbitrate between the [P]arties; and (2) whether the dispute in questions falls within the scope of the [A]rbitration [A]greement." *Id.* (quoting *Am. Heritage Life Ins. Co. v. Lang*, 321 F.3d 533, 537 (5th Cir. 2003)). The strong federal policy favoring arbitration does not apply "to the determination of whether there is a valid agreement to arbitrate between the [P]arties." *Id.* Second, the court must determine "whether any federal statute or policy renders the claims non-arbitrable." *Id.* (quoting *R.M. Perez & Assocs., Inc. v. Welch*, 960 F.2d 534, 538 (5th Cir. 1992)).

## Analysis

A.  <u>Whether Plaintiff and PayPal Agreed to Arbitrate Their Dispute</u>

*(1)    Whether There is a Valid Agreement to Arbitrate Between the Parties*

The initial question for the Court is "whether the [P]arties entered into *any arbitration agreement at all.*" *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016) (emphasis in original). "This first step is a question of contract formation only—did the [P]arties form a valid agreement to arbitrate some set of claims." *IQ Prods. Co. v. WD-40 Co.*, 871 F.3d 344, 348 (5th Cir. 2017). And courts "apply ordinary state-law principles that govern the formation of contracts." *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996).

When, as here, an agreement contains both a choice-of-law provision and an arbitration clause, *see* Pl. Am. Compl., Ex. 9, Arbitration Agreement (ECF

No. 8-9), courts will apply the substantive law of the state named in the choice-of-law provision. *Ebner v. Fin Architects, Inc.*, 763 F. Supp. 2d 697, 700 (D. Del. 2011); *see also Noel v. Paul*, No. 3:21-CV-2485, 2022 WL 4125216, at *4–5 (N.D. Tex. Sept. 9, 2022) (discussing exceptions to this rule that are not present here). The User Agreement includes a broad Delaware choice-of-law provision. *See* Pl. Am. Compl., Ex. 9, Arbitration Agreement (ECF No. 8-9) ("[T]he laws of the State of Delaware . . . will govern this user agreement and any claim or dispute that has arisen or may arise between you and PayPal."). Thus, the Court looks to Delaware law in its analysis on contract formation.

Plaintiff alleges in her Amended Complaint that her claims are not subject to arbitration due to "invalidity" and "no valid agreement." Am. Compl. ¶ 22. She states that "[t]he clickwrap agreement lacked clear notice and was unconscionable, given PayPal's coercive ban." *Id.* She also states she "did not knowingly assent to civil rights violations or obstructed arbitration process." *Id.* But nowhere in her Amended Complaint or opposition to PayPal's motion does Plaintiff elaborate on any lack of notice or unconscionability.

PayPal's User Agreement, which includes the Arbitration Agreement, is a "clickwrap" agreement—an online agreement that requires a "webpage user [to] manifest assent to the terms of a contract by clicking an 'accept' button in order to proceed." *Doe v. Massage Envy Franchising, LLC*, No. S20C-05-5RFS, 2020 WL 7624620, at *2 (Del. Super. Ct. Dec. 21, 2020) (citing *Newell Rubbermaid Inc. v. Storm*, No. 9398-VCN, 2014 WL 1266827, at *1 (Del. Ch. Mar. 27, 2014)). Courts

6

have routinely found clickwrap agreements as binding contracts under Delaware law. *Id.* Absent any specific argument regarding how or why the Arbitration Agreement is invalid, the Court should find that the Agreement is valid.

Additionally, the federal court in the Eastern District of Texas held the Arbitration Agreement at issue to be valid and enforceable, *JLR Glob., LLC v. PayPal Holding Co.*, No. 4:22-CV-559, 2023 WL 2527158, at *6 (E.D. Tex. Mar. 15, 2023) (Mazzant, J.) (the "Arbitration Order"), and PayPal argues that decision should be afforded preclusive effect. *See* Renewed Mot. Compel 6–9. As explained below, the Court may exercise its "broad discretion" and preclude Plaintiff from relitigating the validity and enforceability of the Arbitration Agreement in this case.

The Supreme Court has "long recognized that the determination of a question directly involved in one action is conclusive as to that question in a second suit." *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 148 (2015) (internal quotations omitted). This concept is known as "issue preclusion" (formerly called "collateral estoppel"). *See id.* "The idea is straightforward: Once a court has decided an issue, it is forever settled as between the parties, thereby protecting against the expense and vexation attending multiple lawsuits, conserving judicial resources, and fostering reliance on judicial action by minimizing the possibility of inconsistent verdicts." *Id.* (cleaned up) (internal quotation omitted). "In short, 'a losing litigant deserves no rematch after a defeat

fairly suffered.'" *Id.* (quoting *Astoria Fed. Sav. & Loan Assn. v. Solimino*, 501 U.S. 104, 107 (1991)).

The question "of whether to apply [issue preclusion] is a question of law." *Bradberry v. Jefferson Cnty., Tex.*, 732 F.3d 540, 549 (5th Cir. 2013). And a district judge generally has broad discretion to determine whether issue preclusion should be applied to preclude litigation of an issue. *Copeland v. Merrill Lynch & Co.*, 47 F.3d 1415, 1423 (5th Cir. 1995) (citing *Nations v. Sun Oil Co. (Delaware)*, 705 F.2d 742, 744–45 (5th Cir. 1983) (en banc), *cert denied*, 464 U.S. 893 (1983)).

In determining the preclusive effect of a prior federal court's decision, the Court applies federal common law. *Freeman v. Lester Coggins Trucking, Inc.*, 771 F.2d 860, 862 (5th Cir. 1985). Under federal common law, the elements of issue preclusion are those set out in the Restatement (Second) of Judgments. *See Langley v. Prince*, 926 F.3d 145, 164 (5th Cir. 2019) (en banc) (citing *B & B Hardware, Inc.*, 575 U.S. at 153). The Restatement provides that issue preclusion applies when:

> [A]n issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.

*See* Restatement (Second) of Judgments § 27 (1982). Additionally, the issue of fact or law must be "identical" in both proceedings. *See Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 290 (5th Cir. 2005).

In the context of issue preclusion, however, the requirement of a "final judgment" is not absolute. *See* Rest. (Second) of J. §§ 13, 27 comment k (1982).

8

The Restatement provides that "for purposes of issue preclusion . . . 'final judgement' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." *Id.* § 13. The Restatement recognizes that requiring "strict finality" can lead to hardship through "needless duplication of effort and expense in a second action to decide the same issue." *Id.* § 13 comment g; *see also* 18A *Wright & Miller's Federal Practice and Procedure* § 4434 (3d. ed. Sep. 2025 update) (noting that in applying issue preclusion, "[r]ecent decisions have relaxed traditional views of the finality requirement").

In determining whether an interlocutory order should be considered "final," a court should analyze the following factors:

(a)    Whether the decision to be carried over was "adequately deliberated and firm," or was instead "avowedly tentative";

(b)    Whether the "conclusion in question" was "procedurally definite";

(c)    Whether "the parties were fully heard" on the issue;

(d)    Whether the court supported its decision with a reasoned opinion; and

(e)    Whether "the decision was subject to appeal or was in fact reviewed on appeal."

*See id.* The Fifth Circuit, too, has recognized that "finality" for purposes of issue preclusion does not always require a "final judgment," but only that the issues have been "fully litigated." *See Wheeler v. Kidder Peabody & Co., Inc.*, 1993 WL 455869,

at *2–3 (5th Cir. Oct. 26, 1993) (unpublished) (holding that a prior state-court order compelling arbitration, although interlocutory, was entitled to preclusive effect in subsequent federal court proceeding after Plaintiff voluntarily dismissed his suit and refiled in federal court).

To apply issue preclusion, the Court must find that: (a) the same issue was "actually litigated and determined by a valid and final judgment"; and (b) the issue was "essential to the judgment." *See* Rest. (Second) of J. § 27; *Langley v. Prince*, 926 F.3d 145, 164 (5th Cir. 2019).

The first question is thus whether the interlocutory Arbitration Order may be treated as "valid and final" for purposes of issue preclusion. *See, e.g.*, *Doe v. Tonti Mgmt. Co., L.L.C.*, 24 F.4th 1005, 1009 (5th Cir. 2022) (recognizing that "orders compelling arbitration that stay and administratively close a civil action pending arbitration are interlocutory and unappealable."). The Restatement clarifies that certain interlocutory orders, although not "final judgments" in the strict sense, may be treated as final for the purposes of issue preclusion. *See* Rest. (Second) of J. §§ 13, 27.

 Based on the procedural history of Plaintiff's earlier case in the Eastern District of Texas, the Court may exercise its discretion to treat the interlocutory Arbitration Order as final. Plaintiff, who was represented by counsel in her first lawsuit, was fully heard on the issue, as the Motion to Compel was fully briefed.[1]

---

[1] The briefing included the Motion itself, a Response Brief, a Reply Brief, and a Sur-Reply—totaling over 50 pages.

*Id.* §13 comment g. And the district judge supported his Arbitration Order with a well-reasoned, written memorandum opinion and order. *See id.*; *See generally JLR Glob.*, No. 4:22-CV-559, 2023 WL 2527158 (E.D. Tex. Mar. 15, 2023) (Mazzant, J.). The district judge similarly issued a thorough written opinion and order denying Plaintiff's Motion for Reconsideration of the Arbitration Order purportedly "based on new evidence of the prohibitive costs to arbitrate and impossibility of performance." *JLR Glob., LLC v. PayPal Holding Co.*, No. 4:22-CV-559, 2024 WL 4198003 (E.D. Tex. Sept. 13, 2024) (Mazzant, J.). To be sure, an order compelling arbitration is "unappealable," which weighs against applying issue preclusion. *See* Rest. (Second) of J. § 13 comment g. But on balance, the decision here was sufficiently "firm" and "procedurally definite," such that it is appropriate to treat it as final for purposes of issue preclusion. *See id.* § 13; *Cf. Wheeler*, 1993 WL 455869, at *2–3 (noting that issue preclusion does not always require a "final judgment" but only that the issues have been "fully litigated").

Having resolved that threshold issue, the Court turns to the remaining requirements: whether the "enforceability and validity" of the Arbitration Agreement was "actually litigated and determined" by the Arbitration Order and whether it was "essential to" that Arbitration Order. *See* Rest. (Second) of J. § 27.

The same issue before the Court here—whether a valid and enforceable arbitration agreement existed between Plaintiff and PayPal—was litigated and determined by the Arbitration Order. The Parties specifically briefed, and the court

11

specifically held, that the Arbitration Agreement was: (1) valid and enforceable against Plaintiff; and (2) it survived termination of the Parties' contractual relationship. *See JLR Glob.*, 2023 WL 2527158, at *3–6. And that determination was clearly essential to the Arbitration Order. *See id.* Had validity and enforceability been decided differently, the court could not have compelled the Parties to arbitration. Plaintiff, however, argues that the issues here are not identical because this case "presents new facts absent from [the Eastern District] case," and that she did not have a full and fair opportunity to litigate her claims under 42 U.S.C. §§ 1983 and 1985. *See* Pl. Opp. Mot. Compel 9 (ECF No. 14). But for purposes of issue preclusion, issues are identical where the legal standards governing their resolution are not "significantly different." *See Pace*, 403 F.3d at 290. Here, there is no difference between the legal standards—the standard for determining the validity and enforceability of an arbitration agreement is the same. The issues are therefore "identical." *See id.*; *see also* Rest. (Second) of J. § 27 (where issue preclusion applies, "the determination [as to that issue] is conclusive in a subsequent action between the parties, whether on the same or a different claim").

Finally, applying issue preclusion here "conserve[es] judicial resources," and fosters "reliance on judicial action by minimizing the possibility of inconsistent verdicts." *B & B Hardware, Inc.*, 575 U.S. at 148. And, as discussed above, Plaintiff had a full and fair opportunity to litigate this issue in the earlier case. *See Allen v. Curry*, 449 U.S. 90 (1980). Thus, applying the doctrine will not result in injustice

to Plaintiff and does not contravene public policy. But allowing Plaintiff a clean slate to relitigate this issue after she received an adverse decision about arbitrability would be unfair to PayPal and creates needless duplication. *See B & B Hardware, Inc.*, 575 U.S. at 148. Thus, the Court may, in its discretion, find that Plaintiff is precluded from relitigating the validity and enforceability of the Arbitration Agreement.

 *(2)* *Whether the Dispute in Questions Falls Within the Scope of the Arbitration Agreement*

Whether the claims "fall within the scope" of the Arbitration Agreement is for this Court to decide. *Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1066 (5th Cir. 1998); *see also* Pl. Am. Compl., Ex. 9, Arbitration Agreement (ECF No. 8-9).[2] The Court's sole responsibility, however, "is to determine whether this dispute is governed by an arbitration clause, not to determine the merits of the dispute." *Pennzoil Expl.*, 139 F.3d at 1067. The Court "resolve[s] doubts concerning the scope of coverage of an arbitration clause in favor of arbitration." *Id.* (quoting *Snap-On Tools Corp. v. Mason*, 18 F.3d 1261, 1267 (5th Cir. 1994)). And "[a]rbitration should not be denied unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation that would cover the dispute at issue." *Id.* (quoting *Neal v. Hardee's Food Sys., Inc.*, 918 F.2d 34, 37 (5th Cir. 1990)). In addressing questions of arbitrability, the Court must "keep in

---

[2] The Parties' Arbitration Agreement states that "issues relating to arbitrability, the scope, or enforceability of this Agreement to Arbitrate . . . shall be for a court of competent jurisdiction to decide." *See* Pl. Am. Compl., Ex. 9 (ECF No. 8-9).

mind the strong federal policy favoring arbitration." *See Neal*, 918 F.2d at 37 (citing *Volt Info. Sciences v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 475 (1989)).

In her Amended Complaint, Plaintiff asserts six claims against PayPal. *See generally* Pl. Am. Compl. (ECF No. 8). Two of her claims are based on Texas law: (1) defamation and (2) intentional infliction of emotional distress (IIED) (the "state-law claims"). *See id.* ¶¶ 48–53. Three of her claims are based on PayPal's alleged violations of the First, Fourth, and Fourteenth Amendments under 42 U.S.C. § 1983 (collectively, the "§ 1983 claims"). *See id.* ¶¶ 36–44. And her final claim alleges that PayPal conspired with government agencies to interfere with her civil rights, in violation of 42 U.S.C. § 1985. *See id.* ¶¶ 45–47. The Court assesses each of Plaintiff's claims to determine whether the "claim is covered by the arbitration agreement." *See Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016). But, as the party resisting arbitration, Plaintiff bears the burden of proving that these claims are not arbitrable. *See Polyflow, L.L.C. v. Specialty RTP, L.L.C.*, 993 F.3d 295, 303 (5th Cir. 2021).

The Arbitration Agreement provides, in relevant part:

> You and PayPal agree that any and all disputes or claims that have arisen or may arise between you and PayPal, including without limitation federal and state statutory claims, common law claims, and those based in contract, tort, fraud, misrepresentation or any other legal theory, shall be resolved exclusively through arbitration, rather than in court, except that you may assert claims in small claims court, if your claims qualify and so long as the matter remains in such court and advances only on an individual (non-class, non-representative) basis. This Agreement to Arbitrate is intended to be broadly

> interpreted. The Federal Arbitration Act governs the interpretation and enforcement of this Agreement to Arbitrate.

Pl. Am. Compl. at Ex. 9 (ECF No. 8-9). The Arbitration Agreement is very broad and applies to "any and all disputes or claims that have arisen or may arise" between Plaintiff and PayPal. *See id.*; *cf. In re Sedco*, 767 F.2d 1140, 1145 (5th Cir. 1985) ("[I]t is difficult to imagine broader general language in [an arbitration clause]" than "any dispute").

### i.    The State-Law Claims.

Plaintiff brings claims for defamation and IIED against PayPal. *See* Pl. Am. Compl. ¶¶ 48–53. Both claims are tort claims under Texas law.[3] The plain language of the Arbitration Agreement requires the arbitration of state-law tort claims. *See* Pl. Am. Compl., Ex. 9, Arbitration Agreement (ECF No. 8-9) (providing that "claims based in . . . tort . . . shall be resolved exclusively through arbitration"). Thus, Plaintiff's defamation and IIED claims fall within the scope of the Arbitration Agreement.

### ii.    The § 1983 Claims

Plaintiff next alleges that PayPal violated her First, Fourth, and Fourteenth Amendment Rights and seeks damages for those alleged violations under 42 U.S.C.

---

[3] *See, e.g.*, *Davis v. City of McLendon-Chisholm*, 2025 WL 848474, at *7 (N.D. Tex. Feb. 5, 2025) (McKay, J.), *rec. adopted*, 2025 WL 847877 (N.D. Tex. Mar. 18, 2025) (Scholer, J.) ("Defamation is an intentional tort under Texas law.") (citing *Williams v. United States*, 71 F.3d 502, 507 (5th Cir. 1995)); *Pinedo v. City of Dallas, Texas*, 2015 WL 221085 (N.D. Tex. Jan. 15, 2015) (Fitzwater, J.) ("Intention infliction of emotional distress is a tort claim under Texas law.") (citing *Pleasant Glade Assembly of God v. Schubert*, 264 S.W.3d 1, 16 n.3 (Tex. 2008)).

§ 1983. *See* Pl. Am. Compl. ¶¶ 36–44. Section 1983 is a federal statute that allows a person to bring a claim against a state actor for violating federal law or constitutional rights. *See* 42 U.S.C. § 1983. Thus, these claims are "federal statutory claims," which the plain language of the Arbitration Agreement provides are subject to mandatory arbitration. *See* Pl. Am. Compl., Ex. 9, Arbitration Agreement (ECF No. 8-9) (providing that "federal and state statutory claims . . . or any other legal theory, shall be resolved exclusively through arbitration").

Plaintiff asserts that her § 1983 claims are non-arbitrable, however, and makes two arguments in support of her position. *See* Pl. Opp. Mot. Compel ¶¶ 10–12 (ECF No. 14). First, Plaintiff asserts the Arbitration Agreement "lacks 'a clear and unmistakable' waiver for constitutional claims." *See id.* ¶ 10. Second, Plaintiff argues that these claims "require judicial review" because they "implicate public interests in government accountability," and are "unsuitable for private arbitration." *See id.*

In support of her first argument, Plaintiff cites a single Supreme Court case, *Wright v. Universal Maritime Service Corporation*, 525 U.S. 70, 80 (1998). *See id.* In *Wright* the Supreme Court addressed whether a union-negotiated, general arbitration clause in a collective-bargaining agreement (CBA) required an employee to arbitrate an alleged violation of the Americans with Disabilities Act, 42 U.S.C. § 12101. *See Wright*, 525 U.S. at 72. The *Wright* Court held that the union could not waive an employee's statutory right to a judicial forum absent a "clear and unmistakable" waiver in the CBA. *Id.* at 80. The Court explicitly stated,

however, that the "clear and unmistakable" standard applied only to a union's waiver of the rights of represented employees, not to "an individual's waiver of his own rights." *See id.* at 80–81. Thus, the "clear and unmistakable" standard in *Wright* is inapplicable here—Plaintiff "waiv[ed] her own rights" in the Arbitration Agreement. *See id.* And, in any event, the Arbitration Agreement *does* contain clear language requiring arbitration of federal statutory claims. Pl. Am. Compl., Ex. 9, Arbitration Agreement (ECF No. 8-9) (providing for arbitration of "any and all disputes or claims that have arisen or may arise between you and PayPal including without limitation federal and state statutory claims . . . or any other legal theory").

Plaintiff's second argument, that her § 1983 claims are "unsuitable for arbitration" requires her to show that Congress specifically intended to preclude a waiver of a judicial forum for the subject statutory claims. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991) (noting that the party who has "made the bargain to arbitrate" will be held to it unless they show that Congress intended to preclude a waiver for the statutory rights at issue). Plaintiff can show such Congressional intent by pointing to (i) the statute's text, (ii) its legislative history, or (iii) an inherent conflict between arbitration and the purposes of the statute. *Id.*

Plaintiff offers nothing from the text or the legislative history of 42 U.S.C. § 1983 in support of the position that Congress intended such claims be brought exclusively in a judicial forum. She does, however, cite *McDonald v. City of West Branch* in support of her position. *See* Pl. Opp. Mot. Compel ¶ 12 (ECF No. 14)

(citing *McDonald* 466 U.S. 284, 290 (1984)).[4] The Court liberally construes this citation and her briefing on this point to be an argument that there is an "inherent conflict between arbitration and the underlying purposes" of 42 U.S.C. § 1983. *See Gilmer*, 500 U.S. at 26.

But *McDonald* is not controlling here, as it did not involve the issue of the enforceability of an agreement to arbitrate § 1983 claims. *See Gilmer*, 566 U.S. at 35 (recognizing that *McDonald* "did not involve the issue of the enforceability of an agreement to arbitrate statutory claims"). Rather, the issue in *McDonald* was narrower: whether prior arbitration of contract-claims arising out of a collective bargaining agreement precluded subsequent judicial resolution of related § 1983 claims. *See id.* (citing *McDonald*, 466 U.S. 284). And, on that narrow issue, the Court held that "in a § 1983 action, a federal court should not afford res judicata or collateral-estoppel effect to an award in an arbitration proceeding brought pursuant to the terms of a collective-bargaining agreement." *McDonald*, 466 U.S. at 292. *McDonald* is therefore inapplicable here.

---

[4] Plaintiff also cites "*E.E.O.C. v. Waffle House*, 534 U.S. 279, 294 (2002)" in support of her argument that her claims "implicate public interests requiring judicial review." *See* Pl.'s Opp. Mot. Compel ¶ 10 (ECF No. 14). But the pin citation provided by Plaintiff discusses the Equal Employment Opportunity Commission's independent statutory authority and whether it may be bound by an arbitration provision it did not sign. *See E.E.O.C. v. Waffle House*, 534 U.S. 279, 294 (2002). Plaintiff's citation to *E.E.O.C.*, does not support the proposition for which it was cited and is inapplicable here.

To be sure, dicta in *McDonald* appears to support Plaintiff's argument. Indeed, the *McDonald* court noted that "arbitration cannot provide an adequate substitute for a judicial trial [in §1983 actions]." *See McDonald*, 466 U.S. at 290–292 (also noting that arbitrators may not always have the experience or authority to consider § 1983 claims, plaintiffs may not be adequately represented during arbitration proceedings, and arbitral factfinding procedures may not be adequate to protect plaintiffs' federal rights). While a district court is ordinarily not bound by dicta, Supreme Court dicta is "another matter" and commands significant deference. *See, e.g.*, *Campaign for S. Equal. v. Bryant*, 791 F.3d 625, 627 n.1 (5th Cir. 2015).

But, relevant here, the Supreme Court has since retreated from its position in *McDonald* "that arbitration was inferior to the judicial process for resolving [federal] statutory claims." *See Gilmer*, 500 U.S. at 30, 35. In fact, only a year after *McDonald* was decided, the Supreme Court recognized that a party "does not forgo the substantive rights afforded by statute" by agreeing "to arbitrate a statutory claim." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985). Instead "it only submits to their resolution in an arbitral, rather than a judicial, forum." *Id.*

And, a few years later, in *Gilmer*, the Supreme Court refused to rely on *McDonald* as a basis to preclude enforcement of an agreement to arbitrate a federal statutory claim. *See Gilmer*, 500 U.S. at 26–35. The Court stated that it was "by now clear that statutory claims may be the subject of an arbitration agreement,

enforceable pursuant to the FAA." *See id.* at 26. The *Gilmer* Court noted that *McDonald* "was not decided under the FAA, which . . . reflects a liberal federal policy favoring arbitration agreement," and further found that concerns unique to the factual circumstance in *McDonald* were central to that holding.[5] *See id.* at 35.

Then, in *Green Tree*, the Supreme Court recognized that "even claims arising under a statute designed to further important social policies may be arbitrated because so long as the prospective litigant effectively may vindicate a statutory cause of action in the arbitral forum, the statute serves its functions." *See Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 89–90 (2000) (citing *Gilmer*, 500 U.S. at 28) (internal quotations omitted).

Considering *McDonald*'s narrow holding and the more recent *Gilmer, Green Tree*, and *Mitsubishi Motors* decisions, the Court should give *McDonald*'s dicta

---

[5] *Gilmer*, 500 U.S. at 35 ("There are several important distinctions between the *Gardner–Denver* line of cases and the case before us. First, those cases did not involve the issue of the enforceability of an agreement to arbitrate statutory claims. Rather, they involved the quite different issue whether arbitration of contract-based claims precluded subsequent judicial resolution of statutory claims. Since the employees there had not agreed to arbitrate their statutory claims, and the labor arbitrators were not authorized to resolve such claims, the arbitration in those cases understandably was held not to preclude subsequent statutory actions. Second, because the arbitration in those cases occurred in the context of a collective-bargaining agreement, the claimants there were represented by their unions in the arbitration proceedings. An important concern therefore was the tension between collective representation and individual statutory rights, a concern not applicable to the present case. Finally, those cases were not decided under the FAA, which, as discussed above, reflects a "liberal federal policy favoring arbitration agreements." *Mitsubishi,* 473 U.S., at 625, 105 S.Ct., at 3353. Therefore, those cases provide no basis for refusing to enforce Gilmer's agreement to arbitrate his ADEA claim.").

little weight. What's more, Plaintiff points to no other case in which the Supreme Court—or any court—has held that § 1983 claims are non-arbitrable.

Finally, nothing in the text of 42 U.S.C. § 1983 appears to preclude arbitration. Section 1983 provides that an injured plaintiff may bring an action, "at law . . . in equity, *or other proper proceeding for redress*." 42 U.S.C. § 1983 (emphasis added); *see also Mitsubishi Motors Corp.*, 473 U.S. at 628 ("We must assume that if Congress intended the substantive protection afforded by a given statute to include protection against waiver of the right to a judicial forum, that intention will be deducible from text or legislative history."). Arbitration may be a "proper proceeding for redress" of federal statutory claims under § 1983. *See, e.g.*, *Green Tree*, 531 U.S. at 89–90 ("[E]ven claims arising under a statute designed to further important social policies may be arbitrated.")

Plaintiff has not met her burden to show that her § 1983 claims are not arbitrable—her concern about the importance of her federal statutory claims does not warrant disregarding the Parties' agreement to arbitrate them. *See Polyflow, L.L.C.*, 993 F.3d at 303; *see also Gilmer* 500 U.S. at 26. Thus, Plaintiff's § 1983 claims fall within the scope of the Arbitration Agreement.

iii.    The § 1985 Claim.

Section 1985 is a federal statute permitting a person injured by "conspiracy to violate federal rights" to sue for damages. *See* 42 U.S.C. § 1985(3). Thus, Plaintiff's § 1985 claim is a "federal statutory claim," which the plain language of the Arbitration Agreement provides is subject to mandatory arbitration. *See* Pl.

Am. Compl., Ex. 9, Arbitration Agreement (ECF No. 8-9) (providing that "federal and state statutory claims . . . or any other legal theory, shall be resolved exclusively through arbitration").

Plaintiff argues, however, that her § 1985 claim is not arbitrable for the same reasons as her § 1983 claims. *See* Pl. Opp. Mot. Compel ¶ 10. Again, Plaintiff cites *Wright* and *McDonald* in support of her position. *See id.* But, for the reasons explained above, *Wright*'s "clear and unmistakable" standard does not apply,[6] and *McDonald* does not preclude arbitration of Plaintiff's § 1985 claim. Plaintiff also offers nothing from the text or the legislative history of § 1985 in support of her position.

Plaintiff has not met her burden of proving the Court should disregard this plain language and require the Parties to litigate this federal statutory claim in Court. *See Polyflow, L.L.C.*, 993 F.3d at 303; *see also Gilmer* 500 U.S. at 26; *Green Tree*, 531 U.S. at 89–90 ("[E]ven claims arising under a statute designed to further important social policies may be arbitrated."). Thus, Plaintiff's § 1985 claim falls within the scope of the Arbitration Agreement.

---

[6] Even if that standard applied, the Arbitration Agreement contains clear language requiring arbitration of "federal statutory claims." *See* Pl. Am. Compl., Ex. 9, Arbitration Agreement (ECF No. 8-9).

B. Whether Any Federal Statute, Policy, or Defense Renders the Claims Non-Arbitrable

*1. Waiver*

The right to arbitration may be waived. In the Fifth Circuit, the test for waiver is "whether the party knowingly relinquished the right to arbitrate by acting inconsistently with that right." *See Garcia v. Fuentes Rest. Mgmt. Servs. Inc.*, 141 F.4th 671, 676 (5th Cir. 2025). One way a party may waive its right to seek arbitration is by "substantially invoking the judicial process," that is, "engag[ing] in some overt act in court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration." *See id.* at 676 n. 4. Additionally, prejudice is no longer "a condition of finding that a party, by litigating too long, waived its right to stay litigation or compel arbitration under the FAA." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 419 (2022). "[A] court must hold a party to its arbitration contract just as the court would to any other kind," and it may not devise novel rules to favor arbitration over litigation. *Id.*

Waiver may also result from intentional conduct, the negligent failure to assert the right timely, or some other "default in proceeding with such arbitration." *See* 9 U.S.C. § 3. The FAA does not define what it means for a party to be in default, but the Fifth Circuit has explained that such a determination must be made on the peculiar facts of each case. *Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 346 (5th Cir. 2004); *Valero Refining, Inc. v. M/T Lauberhorn*, 813 F.2d 60, 65 (5th Cir. 1987).

In Plaintiff's Response to the Motion to Compel, she argues that PayPal has waived its right to arbitration by: (1) refusing to pay AAA fees; (2) filing "merits-based" motions; and (3) causing a "25-month" stay in "prior litigation." *See* Pl. Opp. Mot. Compel 1, 4–7 (ECF No. 14). But these arguments will not prevent enforcing the Arbitration Agreement.

First, PayPal did not act inconsistent with its rights to arbitration by refusing to pay arbitration fees. The Arbitration Agreement provides that PayPal need only pay arbitration fees for claims "under $10,000." *See* Pl. Opp. Mot. Compel ¶ 7; *see also* Pl. Am. Compl., Ex. 9 (ECF No. 8) (User Agreement). And here, Plaintiff seeks far more than $10,000 in damages. *See* Pl. Am. Compl. ¶ 54 (Requesting an award of "not less than $25,000,000"); *see also* Pl. Opp. Mot. Compel ¶ 17 (acknowledging that the Arbitration Agreement "limits fee coverage to claims under $10,000").

To be sure, the Arbitration Agreement provides that, in some cases, PayPal may be required to pay arbitration fees regardless of the amount of damages claimed. *See* Pl. Am. Compl., Ex. 9, Arbitration Agreement (ECF No 8-9). But to shift the costs to PayPal under the Arbitration Agreement, a plaintiff must "demonstrate [to the arbitrator] that the costs of accessing arbitration are prohibitive." *Id.* If a plaintiff makes such a showing, the arbitrator can require PayPal to "pay as much of the [arbitration costs] as the arbitrator(s) deem necessary" to prevent the costs from being prohibitive. *Id.* But the record contains no evidence that Plaintiff submitted any such request to the arbitrator. *See* Pl. Am.

Compl. Ex. 37 (ECF No. 8-37) (Plaintiff's email to the arbitrator); *cf.* Pl. Am. Compl., Ex. 38 (ECF No. 8-38) (Plaintiff's email to *PayPal's counsel* requesting that PayPal pay her fees). Instead, Plaintiff sought a "fee waiver" for herself, which the arbitrator granted (lowering the fee to $1,500 from $12,500), and a payment plan for that reduced fee, which the arbitrator denied. *See id.* at Ex. 37 (ECF No. 8-37). Plaintiff never paid the filing fee and, although she told the arbitrator (via email) that she was facing financial difficulties, there is no evidence that Plaintiff submitted financial statements or any supporting documentation showing that she could not afford the expected arbitration fees. *See id.* at Ex. 36 (ECF No. 8-36); *id.* at Ex. 37 (ECF No. 8-37). Thus, the record does not support a finding that PayPal waived its right to arbitration by failing or refusing to pay arbitration fees.

Plaintiff next argues that PayPal engaged in "merits-based litigation," which the Court liberally construes as an argument that PayPal "substantially invoked the judicial process." *See* Pl. Opp. Mot. Compel ¶ 5 (ECF No. 14); *see also Garcia*, 141 F. 4th at 676. In support of this argument, Plaintiff points the Court to an Exhibit [7] she alleges summarizes PayPal's "[l]itigation conduct . . . waiving arbitration." *See* Pl. Opp. Mot. Compel ¶ 5 (ECF No. 14) (citing Pl. Am. Compl., Ex. 34 (ECF No. 8-34). In that Exhibit, Plaintiff argues that beginning with removal to the Eastern District of Texas, PayPal "began a pattern of judicial engagement inconsistent with

---

[7] For clarity, the Exhibit referenced in Plaintiff's Opposition Brief is "Exhibit 32: PayPal's Litigation Conduct in Breach of Arbitration Agreement, Waiving Arbitration." *See* ECF No. 8-34. Plaintiff cites to this document as "Exhibit 34," in her brief. *See* Pl. Opp. Mot. Compel ¶ 5 (ECF No. 14).

arbitration." Pl. Am. Compl., Ex. 34 at 1 (ECF No. 8-34). Plaintiff asserts that PayPal included "merits-based allegations" in a motion to compel arbitration, "refused to pay AAA arbitration fees," and filed responses and sur-replies to her various motions. *Id.* Plaintiff further argues that PayPal waived arbitration by filing an alternative motion to dismiss under 12(b)(6) along with its Motion to Compel Arbitration, and because PayPal raised collateral estoppel as a defense in that Motion. *See id.*

In view of the record, however, the Court finds that PayPal's conduct did not waive arbitration. First, as discussed above, PayPal did not waive arbitration by not paying "AAA arbitration fees." And PayPal did not act inconsistent with its right to arbitration by removing Plaintiff's case to the Eastern District of Texas in the earlier action. *See, e.g.*, *Williams v. Cigna Fin. Advisors, Inc.*, 56 F.3d 656, 661 (5th Cir. 1995) (holding that a party did not waive its right to arbitration by removing action to federal court, moving to dismiss, moving to stay proceedings, answering the complaint, asserting counterclaim, and exchanging Rule 26 discovery). Additionally, immediately after Plaintiff filed this lawsuit, PayPal moved to compel arbitration. *See* Mot. Compel (ECF No. 5). When Plaintiff amended her complaint, thereby mooting PayPal's first motion, PayPal filed a renewed motion seeking to compel arbitration. *See* Renewed Mot. Compel (ECF No. 13).

Further, the mere fact that PayPal seeks dismissal under 12(b)(6) as an alternative to its motion to compel arbitration does not constitute a waiver. *See id.*;

26

*see also Westbrook v. Jag. Indus. Servs.*, 3:14-CV-2080-M, 2015 WL 93447, at *5 (N.D. Tex. Jan. 7, 2015); *TrueBlue, Inc. v. DeRuby*, 3:18-CV-0192-M, 2019 WL 13535488, at *3–4 (N.D. Tex. Jan. 24, 2019). PayPal also did not act inconsistent with its right to arbitration by responding to Plaintiff's various motions in this case. *See Intent Performance LLC v. Intent Sports & Fitness, LLC*, No. 2:23-CV-85-TBM-RPM, 2025 WL 1601045 (S.D. Miss. Jun. 5, 2025), *appeal dismissed*, No. 25-60344, 2025 WL 3900530 (5th Cir. Oct. 15, 2025) (noting that a party had "not waived their right to arbitrate merely by filing responsive pleadings"). Plaintiff cannot manufacture a waiver by filing motions and putting PayPal in a position to either respond or risk losing an opportunity to do so.

Raising collateral estoppel (issue preclusion), too, was not inconsistent with PayPal's right to arbitration. Indeed, PayPal seeks to use this doctrine to preclude Plaintiff from challenging the Arbitration Agreement's validity and enforceability.

Finally, Plaintiff's argument that PayPal's "delay" constitutes a waiver is unsupported by the record. Any delay is attributable to Plaintiff's general resistance to arbitration. PayPal has acted in a manner consistent with its right to compel arbitration. *See Garcia*, 141 F. 4th at 676. Thus, the undersigned recommends that the District Court find that PayPal has not waived its right to arbitration.

### 2. *Prohibitive Costs and Equitable Considerations*

The Court briefly addresses Plaintiff's remaining arguments that (i) the prohibitive costs of arbitration prevent the Court from enforcing the Arbitration

Agreement and (ii) that "Equitable Considerations" demand the judicial resolution of Plaintiff's claims. Pl. Opp. Mot. Compel ¶¶ 16–17, 23–27 (ECF No. 14).

As the party resisting arbitration, Plaintiff has the burden to show "some individualized evidence that [she] will face prohibitive costs in the arbitration at issue and that [she] is financially incapable of meeting those costs." *See, e.g.*, *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 300 (5th Cir. 2004). In her Response, Plaintiff cites "Dkt. 8, Exs. 35–39" as purported evidence of her "demonstrated hardship." Pl. Opp. Mot. Compel ¶ 17. But she does not point to anything within those exhibits specifically. Although the cited exhibits are not overly voluminous, it is "wholly insufficient for a party to cite to the record in the most skeletal way, leaving the Court to conduct an open-ended review of each cited document to determine whether it might contain evidence supporting the party's argument." *See Wimberley v. Beast Energy Servs., Inc.*, No. 3:19-CV-00096, 2022 WL 658717, at *12 (S.D. Tex. Mar. 4, 2022), *rec. adopted*, 2022 WL 836427 (S.D. Tex. Mar. 21, 2022).

That said, having reviewed these exhibits, the Court finds that they are insufficient to show that the costs of arbitration are prohibitive so as to prevent enforcement of the Arbitration Agreement. In Exhibit 36, the arbitrator emailed Plaintiff and provided a significant filing fee waiver (reduced from $12,500 to $1,500). *See* Pl. Am. Compl., Ex. 36 (ECF No. 8-36). And while, in Plaintiff's response to the arbitrator, (Exhibit 37) she stated that she was facing financial difficulties, there is no evidence that Plaintiff submitted any tax returns, financial

statements, or other evidence to the AAA demonstrating that she could not afford the expected arbitration fees. *See id.* at Ex. 37 (ECF No. 8-37) (Plaintiff stated that she "was behind on her mortgage," that the "real estate market had taken a nosedive," that she had applied for, and was denied financing, and that her "credit cards were maxed out"). Nor is there evidence that Plaintiff requested that the arbitrator require PayPal to pay her fees. *See id.* at Ex. 38 (ECF No. 8-38) (Plaintiff emailed PayPal's counsel—not the arbitrator—to "confirm" that PayPal will pay her arbitration fees and asked about upfront payment of "$250,000-$350,000"). On this record, then, the Court should find that Plaintiff failed to carry her burden of showing that she "will face prohibitive costs" that she is "financially incapable of meeting." *See Carter*, 362 F.3d at 300.

Second, Plaintiff's argument that equity requires the Court to set aside the Arbitration Agreement is unconvincing. Plaintiff argues that her "pro se status, $20,000 in costs, and reputational harm from false 'extremist' labels warrant leniency." Pl. Opp. Mot. Compel ¶ 23 (ECF No. 14). And she cites the Supreme Court case, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), in support of her position. *Id.* (citing 404 U.S. at 519–20). In *Haines*, an Illinois state prison inmate sued the governor of Illinois and other state officers and prison officials to recover for alleged injuries sustained in solitary confinement. *See Haines*, 404 U.S. 519–20. The *Haines* Court held that the prisoner's complaint should not have been dismissed under Federal Rule of Civil Procedure 12(b)(6). *Id.* at 520–21. *Haines*

29

did not involve arbitration, reputational harm, or any discussion of costs. *See id.* *Haines* does not support Plaintiff's position.

Plaintiff also cites "*E.E.O.C. v. Waffle House*, 534 at 294" in support of her argument that "the public interest in addressing federal-private collusion outweighs arbitration." Pl. Opp. Mot. Compel ¶ 23. But the pin citation provided by Plaintiff involves a discussion about whether the Equal Employment Opportunity Commission may be bound by an arbitration provision it did not sign. *See E.E.O.C. v. Waffle House*, 534 U.S. 279, 294 (2002).[8] Thus, Plaintiff's citation to *E.E.O.C.* does not support her position.

Plaintiff has failed to present equitable grounds warranting setting aside the Arbitration Agreement. Absent such grounds, the Court should not disturb the Parties' otherwise valid Arbitration Agreement.

C. PayPal's Remaining Arguments and Request to Dismiss

PayPal, as an alternative to compelling arbitration, seeks dismissal of all Plaintiff's claims based on the statute of limitations. *See* Renewed Mot. Compel 15–22 (ECF No. 13). But because Plaintiff's claims are arbitrable, the Court cannot consider the merits of PayPal's arguments for dismissal. *See, e.g.*, *City of Meridian, Miss. v. Algernon Blair, Inc.*, 721 F.2d 525, 528 (5th Cir. 1983).

PayPal further asserts that "dismissal under 12(b)(3) is an 'appropriate' remedy" where, as here, "all of plaintiff's claims must be submitted to arbitration."

---

[8] While *E.E.O.C.* discusses "the public interest" it does so in a context that is unrelated to Plaintiff's proposition. *See E.E.O.C.*, 534 U.S. at 290–296.

*See* Renewed Mot. Compel 13–14 (ECF No. 13). At the same time, PayPal acknowledges that if Plaintiff "requests a stay pending arbitration," the Court must stay the action pursuant to *Smith v. Spizzirri*, 601 U.S. 472 (2024). *Id.* 14. PayPal argues, however, that since neither party has "requested a stay" *Spizzirri* is inapplicable and the decision to dismiss or stay "remains in the sound discretion of the Court." *Id.* (citing *Marquez v. US Foods, Inc.*, No. 3:23-CV-2455-K, 2024 WL 3625674, at *8 (N.D. Tex. July 31, 2024)). But Plaintiff requested a stay in her Opposition to the Motion to Compel. *See* Pl. Opp. Mot. Compel ¶ 18 (ECF No. 14). Thus, the Court should stay the proceeding. *See Spizzirri*, 601 U.S. at 478–79.

### Recommendation

For the reasons stated, the District Judge should **GRANT IN PART** Defendant's Motion, **COMPEL** the Parties to arbitration, and **STAY** the proceedings.

**SO RECOMMENDED**.

January 28, 2026.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

31

## <u>INSTRUCTIONS FOR SERVICE AND</u>
## <u>NOTICE OF RIGHT TO APPEAL/OBJECT</u>

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district judge, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).